**James S. POTETZ, Plaintiff,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 84–1307.**

United States District Court, W.D. Pennsylvania.

April 21, 1986.

Steven Abramovitz, Pittsburgh, Pa., for plaintiff.

Barbara M. Carlin, Asst. U.S. Atty., Pittsburgh, Pa., for defendant.

## MEMORANDUM

McCUNE, District Judge.

This is an action under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Secretary of Health and Human Services (Secretary) denying the plaintiff's claim for disability insurance benefits.

The plaintiff filed an application for disability insurance benefits on March 25, 1982, alleging disability due to back problems and depression since December of 1979. Plaintiff later amended his applica-

---

tion to allege an onset date of March 20, 1976.

Plaintiff's application was denied initially and upon reconsideration. Plaintiff thereafter requested and was granted a hearing before an administrative law judge (ALJ) who, in a decision dated November 1, 1983, also denied benefits. After the Appeals Council denied review the plaintiff timely filed the present action.

We consider the parties' cross motions for summary judgment.

For the reasons stated below, the defendant's motion for summary judgment will be granted.

### Facts

Plaintiff, at the time of his hearing, was a 24 year old male with a ninth grade education. Plaintiff had additional vocational training as an auto mechanic. At various times he has been employed as a janitor, gardener and busboy.

Plaintiff last met the special earnings requirement for disability benefits eligibility on September 30, 1977. Plaintiff must therefore establish that he was disabled prior to that date.

The medical evidence of record indicates that sometime prior to 1976 plaintiff suffered a broken jaw. Although the exact date the injury occurred was not reported, an examination in May of 1976 revealed the plaintiff's jaw had healed in a normal fashion. The examination in May 1976 was necessitated by an automobile accident in which the plaintiff was thrown against the windshield and knocked unconscious. Plaintiff sustained lacerations to the head and face but x-rays were otherwise negative.

In February of 1977 plaintiff reported to the emergency room of Ohio Valley General Hospital complaining of a tightening of the neck and breathing difficulties. Plaintiff's condition, which was deemed to be anxiety related, was treated and plaintiff was released.

In June of 1977, plaintiff was referred to the Staunton Clinic and examined by a psy-chiatrist and social worker. It was reported that plaintiff's thought content was somewhat paranoid but that plaintiff was pleasant in manner, alert and oriented.

Although his intelligence functioning was in the dull normal classification and plaintiff was considered a poor rehabilitative candidate, it was suggested that placement in an unskilled endeavor be attempted (R. 155).

In September of 1977 plaintiff sustained a neck injury while playing football and was hospitalized for approximately five days. Examination revealed a compression fracture of C7. Plaintiff was treated, fitted with a hard cervical collar and discharged in stable condition. Later examination showed the fracture fragments to be in normal alignment (R. 154).

In January of 1978 plaintiff was committed to Western Psychiatric Institute and Clinic (WPIC) by his mother after allegedly threatening to destroy his mother's home and engaging in other bizarre behavior. Plaintiff, for the first time, was diagnosed as suffering from paranoid schizophrenia.

After an arrest for stealing religious objects from a church the plaintiff was again committed, this time to Mayview State Hospital, in July of 1978. While there the previous diagnosis of paranoid schizophrenia was confirmed.

Plaintiff thereafter continued a pattern of schizophrenic behavior with additional commitments up until the present time, the details of which are not pertinent to the plaintiff's condition prior to September 30, 1977.

### Discussion

Although plaintiff claimed disability due to both back problems and depression, the medical evidence, consisting of x-rays and doctor's reports, overwhelmingly supports the conclusion that plaintiff's head, neck and back injuries responded well to treatment and have not impaired plaintiff's physical ability in any manner whatsoever. The Secretary's determination that the plaintiff did not suffer from any severe

exertional impairment is thus supported by substantial evidence.

We therefore need only concern ourselves with whether plaintiff, prior to September 30, 1977, was suffering from a severe nonexertional impairment (paranoid schizophrenia) which significantly affected his ability to perform basic work related functions.

Although plaintiff was not diagnosed as having paranoid schizophrenia until January 1978, the nature of the illness is such that elements of it are usually present throughout most of one's life. Plaintiff has a long history of disciplinary problems and erratic behavior. This does not necessarily mean, however, that since symptoms of plaintiff's impairment were present prior to the expiration of his eligibility for benefits, plaintiff is entitled to disability benefits. Plaintiff must show that his condition was that of a severe impairment.

A severe impairment is an impairment which significantly limits one's ability to perform basic work related functions. 20 C.F.R. § 404.1521(a).

Basic work related functions, as set forth under 20 C.F.R. § 404.1521(b), include the ability to use one's arms, legs, hands and fingers as well as the ability to understand and carry out simple instructions, respond to supervision and co-workers and use of judgment.

■ As previously noted there are no physical limitations which would prevent plaintiff from being gainfully employed. In reviewing the evidence of record we further conclude that plaintiff did not suffer from any nonexertional impairment that would have significantly limited his ability to perform basic work related activities prior to September 30, 1977.

Two factors support such a finding. First, plaintiff originally claimed he became disabled in December of 1979. After learning that this date was past his period of eligibility, plaintiff amended his application to allege an onset date of March 20, 1976. The fact that plaintiff himself did not originally believe he was disabled until December 1979 is significant. The Secretary, in assessing this change of dates, could reasonably conclude that plaintiff did so merely to avoid a denial of his claim and that the onset of plaintiff's disability was indeed somewhere closer to December 1979. Similarly significant is the belief of plaintiff's mother that plaintiff's disability began about one month prior to his January 1978 commitment to WPIC (R. 114). Although this was not the same date as originally alleged by the plaintiff, it nevertheless was still outside the period of plaintiff's eligibility for benefits.

The second, and most important factor which supports the conclusion that plaintiff did not suffer from a severe nonexertional impairment prior to September 30, 1977, are the reports of plaintiff's examining physicians and psychiatrists.

While at the Stauton Clinic in June of 1977 it was reported that plaintiff was alert, pleasant and well oriented and while a poor candidate for rehabilitative training, it was suggested *that placement be attempted in an unskilled endeavor.*

The Secretary could therefore reasonably conclude that the plaintiff did not suffer from a severe impairment which would limit his ability to perform basic work related activities because those at the clinic believed the plaintiff was capable of returning to the work force, albeit in an unskilled position.

Similarly, when examined for his neck injury in September of 1977, no report of irrational or paranoid behavior was reported. To the contrary, the examining physician noted that the plaintiff was alert and well oriented (R. 104), factors directly related to plaintiff's ability to function in a work setting.

What little other evidence that exists pertaining to the relevant time period comes from statements made by the plaintiff and his mother. The reliability of this information is questionable, however, for as noted by the clinician at WPIC "due to conflicting disorganized stories [from plaintiff and his mother] a firm consistent history is difficult to obtain." (R. 114).

We therefore conclude, based on the most reliable evidence available, that the decision of the Secretary that the plaintiff did not suffer from a severe impairment prior to September 30, 1977, is supported by substantial evidence.